ROBERT S. BREWER, JR.
United States Attorney
LEAH R. BUSSELL
Assistant U.S. Attorney
California State Bar 141400
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101
Telephone: (619) 546-6727
E-mail: Leah.Bussell@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

          Plaintiff,

      v.

$1,428,717.56 FROM A BANK ACCOUNT HELD AT WELLS FARGO BANK, ACCOUNT NUMBER ENDING IN 5622,

$27,657.13 FROM A BANK ACCOUNT HELD AT WELLS FARGO BANK, ACCOUNT NUMBER ENDING IN 5275,

2017 BMW M6, VIN WBS6E9C31HG437524,

ONE REAL PROPERTY LOCATED AT 325 7TH AVENUE UNIT 1207 SAN DIEGO CA 92101 AND ALL IMPROVEMENTS AND APPURTENANCES AFFIXED THERETO,

ONE REAL PROPERTY LOCATED AT 2267 AURORA COURT EL CENTRO CA 92243 AND ALL IMPROVEMENTS AND APPURTENANCES AFFIXED THERETO,

ONE REAL PROPERTY LOCATED AT 82602 TIVOLI COURT INDIO CA 92203 AND ALL IMPROVEMENTS AND APPURTENANCES AFFIXED THERETO,

Case No. **'19 CV 0770 BEN LL**

COMPLAINT FOR FORFEITURE

USAO:2019v00009:LRB/bfs

ONE LOT LOCATED AT 1502 S LA
BRUCHERIE ROAD EL CENTRO CA
92243 AND ALL IMPROVEMENTS AND
APPURTENANCES AFFIXED THERETO,

Defendants.

By way of complaint against the defendants listed in the caption above, (collectively referred to hereinafter as the "Defendants"), the United States of America alleges:

1.    This Court has jurisdiction over this action by virtue of the provisions of Title 18, United States Code, Sections 981(a)(1)(C) , because the Defendants constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of a Federal health care offense, including violations of 18 U.S.C. § 1035 (False Statement Relating to Health Care Matters); § 1343 (Honest Services Wire Fraud Affecting a Health Care Benefit Program); § 1347 (Health Care Fraud); and 42 U.S.C. § 1320a-7b(b) (Health Care Fraud).

2.    Venue is proper in this district pursuant to Title 28, United States Code, Section 1395 because the Defendants, except for the real property located at 82602 Tivoli Court, Indio, CA 92203 are located in this district.  Venue is proper in this district as to all Defendants including the real property pursuant to Title 28, United States Code, Section 1355 because acts or omissions giving rise to the forfeiture of the Defendants occurred in this district.

<u>THE MEDICARE FRAUD SCHEME</u>

3.    Law Enforcement Officers with the Federal Bureau of Investigation and United States Department of Health and Human Services, Office of Inspector General ("Law Enforcement Officers") have been investigating suspected health care fraud related violations being conducted by Doctor Javad S. Aghaloo ("Aghaloo").

4.    Aghaloo is a California state licensed dentist who oversees the operations of multiple dental practices, including Southwest Dental Group ("Southwest Dental"). Southwest Dental is a general dentistry practice located at 1502 S. La Brucherie Road, El Centro, California, 92251. In addition to treating patients, Aghaloo manages billing

policies, operations of administrative staff, and dental care provided by other dentists working at Southwest Dental.

5.     Aghaloo became a Medicare provider on December 8, 2015. Medicare is a federally funded health benefit program for persons aged 65 and older, and certain disabled individuals. Medicare is administered by the Center for Medicare and Medicaid Services ("CMS"), an agency within the Department of Health and Human Services. In Southern California, CMS contracts with the company Noridian Administrative Services, LLC ("Noridian") to process and pay claims to Medicare providers. Claims are submitted to Noridian electronically. Noridian reimburses providers for 80% of submitted claims through an electronic funds transfer into a designated bank account.

6.     Every claim submitted by or on behalf of a provider is submitted under an agreement by the provider to abide by Medicare's program rules and regulations. Medicare publishes rules regarding medical services.  These rules are available for providers on the websites of Noridian and CMS.  The information includes guidance on what services Medicare will pay for and what conditions must be met before Medicare reimburses for a particular service.

7.     According to its website, CMS makes clear that, with very limited exceptions, Medicare does not pay for dental services (the "Medicare Dental Exceptions"). Specifically, CMS explains:  "Currently, Medicare will pay for dental services that are an integral part either of a covered procedure (e.g., reconstruction of the jaw following accidental injury), or for extractions done in preparation for radiation treatment for neoplastic diseases involving the jaw.  Medicare will also make payment for oral examinations, but not treatment, preceding kidney transplantation or heart valve replacement, under certain circumstances."

8.     CMS explicitly provides that the following two categories of services are excluded from Medicare coverage.  First, "[a] primary service (regardless of cause or complexity) provided for the care, treatment, removal, or replacement of teeth or structures directly supporting teeth, e.g., preparation of the mouth for dentures, removal of diseased

3

teeth in an infected jaw."  Second, "[a] secondary service that is related to the teeth or structures directly supporting the teeth unless it is incident to and an integral part of a covered primary service that is necessary to treat a non-dental condition (e.g., tumor removal) and it is performed at the same time as the covered primary service and by the same physician/dentist."

9.    As a result of Aghaloo becoming enrolled as a Medicare provider, Noridian sent Aghaloo a letter, dated January 20, 2016. Noridian notifying Aghaloo that he was "required to ensure strict compliance with Medicare regulations, including payment policy and coverage guidelines." The letter provided Aghaloo with links to the websites for Noridian and CMS, where "Medicare policies and regulations can be found[.]"

10.    When viewed on a patient-by-patient basis, the vast bulk of Medicare claims submitted by Aghaloo through his professional corporation, Javad Aghaloo, DDS, APC ("Aghaloo DDS"), were submitted under the following CPT codes:

        a)  21210 (repair of nasal or cheek bone with bone graft);

        b)  21215 (repair of lower jaw bone with bone graft);

        c)  21208 (incision and repair of bony defect of cheek bone with repositioning of bony segment);

        d)  21025 (removal of lower jaw bone);

        e)  21026 (removal of facial bones); and

        f)  21079 procedure (impression and custom preparation of temporary oral prosthesis).

All of the patients were assigned a diagnosis code of M27.2 ("inflammatory conditions of the jaws"). Aghaloo could only bill Medicare for these CPT codes if the patients receiving the procedures had a condition which qualified under the Dental Medicare Exceptions.

11.    A review was conducted on Medicare records, in which the records for ten randomly selected former Medicare patients of Aghaloo were carefully examined. Aghaloo DDS submitted claims to Medicare for these patients, under the 21210 or 21215 billing codes. An examination of these patients' historical records revealed no preexisting

medical condition that would have authorized Aghaloo DDS to bill Medicare under CPT codes 21210 or 21215 for bone grafts.

12.   A dental consultant with the Medi-Cal Dental Services Division of the California Department of Health Care Services (the "Dental Consultant"), provided further guidance on the nature of services provided under CPT Codes 21210 or 21215. According to the Dental Consultant, CPT codes 21210 and 21215 are typically used to treat a fracture caused by a traumatic injury or to rebuild jawbone in patients who had teeth extracted many years earlier. The Dental Consultant advised that he would not expect the complex procedures described by CPT codes 21210 and 21215 to be performed by a dentist in a dental office. Contrarily, an oral and maxillofacial surgeon in a hospital or surgical center using general anesthesia performs such procedures.

13.   A second review was conducted on Medicare records, for the purpose of uncovering how many times per day Southwest Dental Group was claiming to perform bone grafts on Medicare patients. The review revealed that there were several instances in which Javad Aghaloo, DDS, APC, billed Medicare for more than ten CPT code 21210 and 21215 procedures in a single day.

14.   According to the Dental Consultant, a single oral and maxillofacial surgeon could perform at most two or three complex bone grafts per day, due to the extensiveness of the procedure and because it involves general anesthesia.

15.   Law Enforcement Officers conducted interviews of former patients with Southwest Dental. Additionally, Law Enforcement Officers reviewed reports of patient interviews conducted by investigators with the California Department of Justice, Bureau of Medical Fraud and Elder Abuse.

16.   Many of the patients indicated that they had received teeth extractions at Southwest Dental. At the time of the extractions, the patients stated that they were not suffering from any serious illnesses such as cancer or traumatic injury. For example, one patient went to Southwest Dental to have a loose tooth and cracked tooth repaired. Southwest Dental performed extractions on all of his/her top teeth, which were then billed

to Medicare. Another patient stated that he/she went to Southwest Dental because his/her molars were bothering him/her. Southwest Dental performed multiple extractions, which were then billed to Medicare. None of the interviewed patients indicated that they had any conditions that would have permitted their treatment to fall under the Medicare Dental Exceptions.

17.    The former patients stated that they felt substantial pressure from Southwest Dental staff to have their teeth extracted. The patients stated that they were told Medicare would cover the cost of the extractions. A review of Medicare records for some of the interviewed patients revealed that for their procedures, Aghaloo DDS billed Medicare under CPT code 21210. Law Enforcement Officers discovered that for one of the interviewed patients, the patient refused to have his/her teeth extracted. Medicare records revealed that Aghaloo DDS billed Medicare for more than $5,000, under CPT code 21210, for "removal of lower jawbone" and "repair or bony defect in cheek bone".

18.    An individual who claimed to be an employee at Southwest Dental Group, created a post on her personal page, on the social media website www.Facebook.com, in June 2017. The employee posted a picture of bloody extracted teeth next to dental tools. Below the image the employee stated, partially in Spanish and partially in English, "I love these days...I [love] my job #swd #mc #drj #my little old people #toothfairy #everybody is toothless". Law Enforcement Officers inferred that "swd" referred to Southwest Dental, "mc" referred to Medicare," and "drj"'s referred to Dr. Javad Aghaloo.  Additionally, the employee posted symbols commonly known as "emojis" which juxtaposed depictions of an elderly female and elderly male with a depiction of United States currency.   The Facebook post suggests that the employee earned money for extracting teeth from "little old people."

19.    Based on bank records, Aghaloo issued checks to the employee on multiple occasions, with "Bonus" written on the memo line ("Bonus Checks"). Aghaloo also issued many other Bonus Checks to a variety of other employees at Southwest Dental, including entry level support staff members.

20.     A third review was conducted of Medicare records, centered on the demographics of beneficiaries who received Medicare-reimbursed treatment at Southwest Dental Group between March 2016 and October 2018. This review revealed that many of the Medicare beneficiaries came from the same residential areas.   For example, 36 beneficiaries resided at one of two senior citizen apartment complexes in a city in California.

21.     On July 28, 2016, Aghaloo established a Section 501(c)(3) non-profit corporation known as the SAGE Initiative ("SAGE"). According to the determination letter issued by the Internal Revenue Service classifying SAGE as a "public charity," SAGE's official address was the same address as Southwest Dental Group. According to SAGE's public website, SAGE "is a non-profit organization that provides free comprehensive dental care to low income individuals, veterans, and undocumented immigrants. Everyday we treat and cure infected and diseased teeth and gums for low-income individuals, undocumented immigrants, and Veterans at no cost."   SAGE represents that since its inception, it has provided "over $1.3 million in free dental services that include procedures such as extractions, fillings, bridges, and crowns."

22.     A former employee at Southwest Dental provided insight as to SAGE's true purpose. According to the employee, SAGE's true purpose was to identify Medicare patients in the community and funnel them to Southwest Dental Group to increase the number of Medicare receivables. SAGE distributed flyers to members of the community. The flyers represented that SAGE would provide free dental care to low income individuals. While Aghaloo was participating in offering SAGE dental services and community outreach activities, he was scouting for potential Medicare beneficiaries. Aghaloo would schedule future appointments for them at Southwest Dental.   The information from the website and the former employer suggest that SAGE was providing routine dental services (i.e., service to "treat and cure infected and diseased teeth and gums"… including "extractions, fillings, bridges, and crowns") which are not covered by Medicare.

23.     According to Medicare data, between the dates of March 1, 2016, and October 18, 2018, Aghaloo DDS submitted $21,427,688.00 in claims to Medicare, consisting of 7,224 individual claim lines. Of the $21,427,688.00 billed, Medicare has reimbursed to Aghaloo DDS, the total sum of $9,492,445.17. Of the $9,492,445.17 paid by Medicare, $6,650,428.42 represents reimbursements for services associated with CPT codes 21210 and 21215.

24.     During the period of March 1, 2016 and October 18, 2018, no physician or business entity in the United States (regardless of specialization) billed Medicare under CPT codes 21210 and 21215 for more money than Aghaloo billed through his professional corporation. Of the $122,088,735.34 billed to Medicare in the United States during that period for those codes, Aghaloo's Medicare billings for CPT code 21210 and 21215 services- $15,713,800.00 -- represent 13% of the national total.

25.     CMS requires that all claims submitted to Medicare include a rendering provider. The rendering provider is the physician who actually performs the medical service which is being billed to Medicare. Of the claims billed to Medicare by Aghaloo DDS, Aghaloo was listed as the rendering provider in 89% of the claims. It is mathematically improbable that Aghaloo was in fact the rendering provider for 89% of the 7,224 individual claim lines submitted to Medicare between March 1, 2016 and October 18, 2018 (a total span of 663 work days). Approximately 1,992 individual claim lines were associated with the CPT codes 21210 or 21215. Conservatively assuming that a general dentistry practice could perform 3 of the procedures billed under codes 21210 or 21215 per day, Aghaloo would have required approximately 664 days to have personally performed all 1,992 of them. Aghaloo would have required an additional approximately 261 days to perform the remaining services associated with the other non 21210 or 21215 individual claim lines (conservatively estimating a daily maximum of 20 claim lines performed by one provider).

26.     The restrictions on Medicare reimbursement for routine dental services, in conjunction with the disproportionate volume of reimbursements sought and collected by

Aghaloo for complex surgical procedures lead to a presumption that the majority of the patients for whom Southwest Dental treated did not have any conditions which would fall under the Medicare Dental Exceptions (dental procedures that are an integral part of a covered medical procedure, or in preparation for radiation treatment involving cancer of the jaw.) This presumption is substantiated by statements by the Dental Consultant regarding procedures properly billed under CPT codes 21210 and 21215, financial and open source records indicating the operation of an incentive system by Aghaloo for increasing Medicare-billed extractions, the statements of former patients as to the nature of the treatments they received (and the conditions the patients had at the time of receiving treatment), along with various reviews of Medicare records.

27.   All of the foregoing demonstrates that all of the Medicare payments for claims submitted by Aghaloo DDS, constitutes proceeds of a criminal scheme by Aghaloo, Aghaloo DDS, and Southwest Dental Group to defraud Medicare, by among other things, executing high volumes dental procedures, including tooth extractions, on patients who do not have conditions falling under the Medicare Dental Exceptions, and subsequently billing Medicare for those procedures.

## COUNT 1

DEFENDANT WELLS FARGO BANK ACCOUNT NUMBER ENDING IN 5622

28.   The allegations contained in paragraphs 1 through 27 above are incorporated herein by reference and included as a part hereof.

29.   According to Medicare data, all of the Medicare payments for claims submitted by Southwest Dental Group were deposited into a bank account held at Wells Fargo Bank, N.A., with an account number ending in 5622 ("Defendant Medicare Account").

30.   Based on bank records obtained from Wells Fargo Bank, the Defendant Medicare Account is held in the name of Javad S. Aghaloo, DDS a Professional Corporation, d/b/a Southwest Dental Group. This is the account into which Medicare paid for all of the claims submitted by Southwest Dental. The payments were issued from

Noridian, in the form of an electronic funds transfer payment. The Medicare payments appear on the bank records' transaction description as "Noridian N. CA Hcclaimpmt [Number]" (the "Noridian Deposits").

31.     The Defendant Medicare Account also received deposits from private insurance companies. To account for commingled funds, the Lowest Intermediary Balance Tracing Rule ("LIBR") was utilized to trace the movement of Noridian Deposits into and out of the Defendant Medicare Account.[1] After applying the LIBR, between July 26, 2016 and October 31, 2018, the Noridian Deposits accounted for at least 90% of the total balance of the Defendant Medicare Account.

32.     Applying the Title 18, United States Code, Section 984 analysis, between April 26, 2018 and April 26, 2019, Noridian deposited at least $1,874,395.18 into the Defendant Medicare Account.

33.     The Defendant Medicare Account constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of a Federal health care offense, including violations of 18 U.S.C. § 1035 (False Statement Relating to Health Care Matters); § 1343 (Honest Services Wire Fraud Affecting a Health Care Benefit Program); § 1347 (Health Care Fraud); and 42 U.S.C. § 1320a-7b(b) (Health Care Fraud).

34.     By virtue of the aforementioned acts and premises alleged herein, either singly or in combination, $1,428,717.56 from a bank account held at Wells Fargo Bank, account number ending in 5622, is subject to forfeiture under Title 18, United States Code, Sections 981(a)(1)(C), 984 and 1956(c)(7)(F).

## COUNT 2

## DEFENDANT WELLS FARGO BANK ACCOUNT NUMBER 5275

---

[1] "The LIBR is an accounting principal used to calculate which funds are subject to forfeiture in an account containing both tainted and legitimate funds. *See, Banco Cafetero,* 797 F.2d at 1159. The LIBR posits that when commingled funds are in an account, legitimate funds are withdrawn first, leaving the tainted funds in the account. When there is insufficient legitimate funds to cover a specific withdraw, then tainted funds are used to cover the withdraw. The balance of tainted funds in the account is reduced according to the amount needed to make the withdraw. This reduced balance of tainted funds is considered the intermediate balance of the tainted funds. If legitimate funds are added to the account later, the intermediate balance of tainted funds in the account does not increase. Over the course of time, as deposits and withdraws are made into an account, the LIBR keeps track of the intermediate balance of tainted funds in the account." *U.S. v. Haleamau,* 887 F.Supp.2d 1051, 1057, 2012 WL 3394952, at *5 (D. Hawaii, 2012) Citing *U.S. v. Banco Cafetero Panama,* 797 F.2d 1154, 1159 (2nd Circuit, 1986).

35.    The allegations contained in paragraphs 1 through 34 above are incorporated herein by reference and included as a part hereof.

36.    Based on bank records obtained from Wells Fargo, the Defendant Medicare Account sent multiple wire transfers into a bank account held at Wells Fargo Bank, N.A, with an account number ending in 5275 ("Defendant 5275 Account"). The Defendant 5275 Account was held in the name of Aghaloo DDS Incorporation.

37.    Applying the Title 18, United States Code, Section 984 analysis, between April 26, 2018 and April 26, 2019, the Defendant Medicare Account transferred at least $27,657.13 into the Defendant 5275 Account, which originated as Noridian Deposits.

38.    The Defendant 5275 Account constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of a Federal health care offense, including violations of 18 U.S.C. § 1035 (False Statement Relating to Health Care Matters); § 1343 (Honest Services Wire Fraud Affecting a Health Care Benefit Program); § 1347 (Health Care Fraud); and 42 U.S.C. § 1320a-7b(b) (Health Care Fraud).

39.    By virtue of the aforementioned acts and premises alleged herein, either singly or in combination, $27,657.13 from a bank account held at Wells Fargo Bank, account number ending in 5275, is subject to forfeiture under Title 18, United States Code, Sections 981(a)(1)(C), 984 and 1956(c)(7)(F).

**COUNT 3**

DEFENDANT 2017 BMW M6, VIN WBS6E9C31HG437524

40.    The allegations contained in paragraphs 1 through 34 above are incorporated herein by reference and included as a part hereof.

41.    Based on records received from Wells Fargo Bank, Aghaloo wrote a check on May 5, 2017, directly from the Defendant Medicare Account to BMW Riverside in the amount of $135,479.00. The memo line of the check stated, "2017 BMW M6"

42.    DMV and NADA records indicate Aghaloo is the titled owner of a 2017 BMW 6 Series Sedan 4D M6 4.4L V8, VIN WBS6E9C31HG437524 (the "Defendant //

Vehicle"). There are no liens on the Defendant Vehicle, and Aghaloo is the sole titled owner of the Defendant Vehicle.

43. After applying the LIBR, at the time of the payment for the Defendant Vehicle, the entire balance of the Defendant Medicare Account consisted of Noridian Deposits.

44. The Defendant Vehicle constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of a Federal health care offense, including violations of 18 U.S.C. § 1035 (False Statement Relating to Health Care Matters); § 1343 (Honest Services Wire Fraud Affecting a Health Care Benefit Program); § 1347 (Health Care Fraud); and 42 U.S.C. § 1320a-7b(b) (Health Care Fraud).

45. By virtue of the aforementioned acts and premises alleged herein, either singly or in combination, the Defendant Vehicle is subject to forfeiture under Title 18, United States Code, Sections 981(a)(1)(C) and 1956(c)(7)(F).

**COUNT 4**

DEFENDANT 325 7TH AVENUE UNIT 1207, SAN DIEGO, CA 92101

46. The allegations contained in paragraphs 1 through 34 above are incorporated herein by reference and included as a part hereof.

47. On December 5, 2016, a wire transfer in the amount of $284,977.00 ("Wire Transfer 1") was sent from the Defendant Medicare Account to Eaton Escrow Inc.

48. After applying the LIBR, on the closing date prior to Wire Transfer 1 (December 2, 2016), the closing balance of the Defendant Medicare Account was $624,504.76. The entire closing balance constituted Noridian Deposits. After this date, but prior to Wire Transfer 1, the Defendant Medicare Account received three non-Noridian Deposits totaling $18,466.42. Accordingly, $266,510.58 from Wire Transfer 1 (totaling $284,977.00) constituted Noridian Deposits.

49. Based on records obtained from Eaton Escrow Inc., the funds encompassing Wire Transfer 1 were used towards the purchase of real property located at 325 7th Avenue, Unit 1207, San Diego, CA 92101 and all improvements and appurtenances affixed thereto,

("Defendant 325 7th Avenue Property"). The Defendant 325 7th Avenue Property is more particularly described as:

### Assessor's Parcel Number 535-563-37-15

Real property in the City of San Diego, County of San Diego, State of California, described as follows:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

AN UNDIVIDED 1/178TH FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO THE COMMON AREA WITHIN THE RESIDENTIAL MODULE SHOWN ON THE AMENDED, RESTATED AND SUPERCEDED THE LEGEND CONDOMINIUM PLAN, RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON AUGUST 30, 2007 AS INSTRUMENT NO. 2007-0575990 AND ANY AMENDMENTS AND SUPPLEMENTS THERETO (COLLECTIVELY "CONDOMINIUM PLAN"), LOCATED WITHIN PARCEL 2 OF PARCEL MAP 19494 IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON MAY 25, 2004 AS INSTRUMENT NO. 04-0478045 ("MAP").

AMENDED PURSUANT TO THAT CERTAIN CERTIFICATE OF CORRECTION RECORDED JUNE 28, 2010 AS INTRUMENT NO. 10-324401 AND NOVEMBER 02, 2010 AS INTRUMENT NO. 10-592392, BOTH OF OFFICIAL RECORDS.

PARCEL 2:

RESIDENTIAL UNIT NO. 1207, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN.

PARCEL 3:

NON-EXCLUSIVE APPURTENANT EASEMENT IN AND TO THE ASSOCIATION PROPERTY, RESIDENTIAL, COMMON AREA PURSUANT TO THE TERMS OF THE DECLARATION. AS USED IN THIS DEED, REFERENCES TO "ASSOCIATION PROPERTY", "RESIDENTIAL UNIT", "EXLUSIVE USE AREAS", "COMMON AREA" AND ANY OTHER DEFINED TERMS SHALL HAVE THE MEANINGS AS SET FORTH IN THE DECLARATION AND THE CONDOMINIUM PLAN.

APN: 535-563-37-15

50.    Aghaloo was the buyer of the Defendant 325 7th Avenue Property. Based on a title report acquired on or about April 20, 2019, Aghaloo is the current owner of the Defendant 325 7th Avenue Property.

51.     The  Defendant 325 7th Avenue Property constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of a Federal health care offense, including violations of 18 U.S.C. § 1035 (False Statement Relating to Health Care Matters); § 1343 (Honest Services Wire Fraud Affecting a Health Care Benefit Program); § 1347 (Health Care Fraud); and 42 U.S.C. § 1320a-7b(b) (Health Care Fraud).

52.     By virtue of the aforementioned acts and premises alleged herein, either singly or in combination, the Defendant 325 7th Avenue Property is subject to forfeiture under Title 18, United States Code, Sections 981(a)(1)(C) and 1956(c)(7)(F).

53.     The estimated value of the 325 7th Ave Property is approximately $650,000.00.

## COUNT 5

### DEFENDANT 2267 AURORA COURT, EL CENTRO, CA

54.     The allegations contained in paragraphs 1 through 34 above are incorporated herein by reference and included as a part hereof.

55.     Based on bank records obtained from Wells Fargo, on December 29, 2016, a wire transfer in the amount of $104,191.40 ("Wire Transfer 2") was sent from the Defendant Medicare Account to Chicago Title Co.

56.     After applying the LIBR, on the closing date prior to Wire Transfer 2 (December 28, 2016), the closing balance of the Defendant Medicare Account was $321,608.66. The entire closing balance constituted Noridian Deposits. After this date, but prior to Wire Transfer 2, the Defendant Medicare Account received two non -Noridian Deposits totaling $233.20. Accordingly, $103,958.20 from Wire Transfer 2 (totaling $104,191.49) constituted Noridian Deposits.

57.     Based on records obtained from Chicago Title Co., the funds encompassing Wire Transfer 2, were used towards the purchase of real property located at 2267 Aurora Court, El Centro, CA 92243 and all improvements and appurtenances affixed thereto ("Defendant Aurora Property"). The Defendant Aurora Property is more particularly described as:

### Assessor's Parcel Number 052-455-028-000

For APN/Parcel ID(s): 052-455-028-000

That portion of Lots 10, 11, and 12 of Amending Map of Desert Estates Subdivision Unit 4, City of El Centro, County of Imperial, State of California, according to Map on file in Book 16, Page 74 of Final Maps in the Office of the County Recorder of Imperial County, shown as Lot 11A as referred to in that Certificate of Compliance recorded July 23, 1993 in Book 1739, Page 1154 of Official Records.

More particularly described as follows:

Beginning at a point on the South Boundary of said Final Maps, in Book 16, Pages 74 and 75, said point being 64.36 feet Easterly of the Southwest corner of Lot 10 of said Final Map, said point also being the True Point of beginning, thence North 00° 06' 22" East 113.67 feet to the beginning of a non-tangent 50 foot radius curve concave Northerly, a radial to said point bears South 06°11'22" West; thence Easterly along said curve through a central angle 21°15'01" an arc distance of 18.54 feet to the point tangency; thence tangent to said curve, North 74°56'21" East 47.58 feet to the Northeast corner thereof; thence South 00°02'50" East 127.40 feet, more or less to the point of intersection with the South line of said Final Map in Book 16, Pages 74 and 75; thence along said South line South 89°56'59" West 64.64 feet, more or less to the True Point of Beginning.

58.     Aghaloo was the buyer of the Defendant Aurora Property. Based on a title report acquired on or about April 20, 2019, Aghaloo is the current owner of the Defendant Aurora Property.

59.     The Defendant Aurora Property constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of a Federal health care offense, including violations of 18 U.S.C. § 1035 (False Statement Relating to Health Care Matters); § 1343 (Honest Services Wire Fraud Affecting a Health Care Benefit Program); § 1347 (Health Care Fraud); and 42 U.S.C. § 1320a-7b(b) (Health Care Fraud).

60.     By virtue of the aforementioned acts and premises alleged herein, either singly or in combination, the Defendant Aurora Property is subject to forfeiture under Title 18, United States Code, Sections 981(a)(1)(C) and 1956(c)(7)(F).

61.     The estimated value of the Aurora Property is approximately $290,000.00.

//

//

//

15

## COUNT 6

### DEFENDANT 82602 TIVOLI COURT, INDIO, CA 92203

62.    The allegations contained in paragraphs 1 through 39 above are incorporated herein by reference and included as a part hereof.

63.    On September 15, 2017, a wire transfer in the amount of $316,081.17 ("Wire Transfer 3") was sent from the Defendant 5275 Account to Lawyer's Title Company.

64.    After applying the LIBR, on the closing date prior to Wire Transfer 3 (September 14, 2017), the closing balance of the Defendant 5275 Account was $326,050.42. The entire closing balance constituted transfers from the Defendant Medicare Account into the Defendant 5275 Account, that were originally Noridian Deposits. After this date, but prior to Wire Transfer 3, the Defendant 5275 Account received three non-Noridian Deposits totaling $3,686.35.  Accordingly, $312,394.82 from Wire Transfer 3 (totaling 316,081.17) constituted Noridian Deposits.

65.    Based on records obtained from Lawyer's Title Company, the funds encompassing Wire Transfer 3 were used towards the purchase of real property located at 82602 Tivoli Court, Indio, CA 92203 and all improvements and appurtenances affixed thereto ("Defendant Tivoli Property"). The Defendant Tivoli Property is more particularly described as:

**Assessor's Parcel Number: 692-200-066-5**

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 66 OF TRACT NO. 31072, IN THE CITY OF INDIO, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, ACCORDING TO MAP RECORDED IN BOOK 348, PAGES 1 THROUGH 3 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, CALIFORNIA.

//

//

//

PARCEL 2:

NON-EXCLUSIVE EASEMENT APPURTENANT TO PARCEL 1 ABOVE, ON AND OVER THE "COMMON AREA" AS DEFINED IN THE DECLARATION FOR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS AND EGRESS OF THE AMENITIES LOCATED THEREON. THE COMMON ARE IS FOR THE USE OF OWNERS OF LOTS WHICH ARE SUBJECT TO THE DECLARATION RECORDED ON FEBRUARY 26, 2004, AS INSTRUMENT NO. 20040132935, OF OFFICIAL RECORDS AND IS NOT FOR THE USE OF THE GENERAL PUBLIC.

ASSESSOR'S PARCEL NUMBER: 692-200-066-5

66.    The buyer of the Defendant Tivoli Property was Aghaloo, DDS, Inc. Based on open source records, Aghaloo, DDS, Inc. is owned by Aghaloo. Based on a title report acquired on or about April 20, 2019, Aghaloo, DDS, Inc. is the current owner of the Defendant Tivoli Property.

67.    The Defendant Tivoli Property constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of a Federal health care offense, including violations of 18 U.S.C. § 1035 (False Statement Relating to Health Care Matters); § 1343 (Honest Services Wire Fraud Affecting a Health Care Benefit Program); § 1347 (Health Care Fraud); and 42 U.S.C. § 1320a-7b(b) (Health Care Fraud).

68.    By virtue of the aforementioned acts and premises alleged herein, either singly or in combination, the Defendant Tivoli Property is subject to forfeiture under Title 18, United States Code, Sections 981(a)(1)(C) and 1956(c)(7)(F).

69.    The estimated value of the Tivoli Property is approximately $325,000.

## COUNT 7

### DEFENDANT 1502 S LA BRUCHERIE ROAD, EL CENTRO, CA

70.    The allegations contained in paragraphs 1 through 34 above are incorporated herein by reference and included as a part hereof.

71.    Based on bank records obtained from Wells Fargo, between June 8, 2016 and June 29, 2017, the Defendant Medicare Account submitted approximately 23 transfers, totaling approximately $445,211.46, into a bank account held at Wells Fargo Bank, N.A., with an account number ending in 0950 ("0950 Account"). The 0950 Account was held in

the name of The School-Aged Gap Elimination Initiative, Inc. On June 28, 2017, a wire transfer for $371,450.00 ("Wire Transfer 4") was sent from the 0950 Account to Chicago Title Company.

72.     After applying the LIBR, on the closing date prior to Wire Transfer 4 (June 26, 2017), the account contained $354,767.32, of which $250,749.98 constituted transfers from the Defendant Medicare Account that were originally Noridian Deposits. At the time of the wire transfer, $104,017.34 of the total balance of the 0950 Account constituted non Noridian Deposits. Accordingly, $267,432.66 from Wire Transfer 4 (totaling $371,450.00) constituted Noridian Deposits.

73.     Based on records obtained from Chicago Title Company, the funds encompassing Wire Transfer 4 were used towards the purchase of real property located at located at 1502 S La Brucherie Road, El Centro, CA 92243 and all improvements and appurtenances affixed thereto ("Defendant La Brucherie Road Property"). The Defendant La Brucherie Road Property is more particularly described as:

**Assessor's Parcel Number: 052-453-069-000**

For APN/Parcel ID(s): 052-453-069-000

Lot 1, Block 1, La Donna Village Subdivision, Unit No. 1, in the City of El Centro, County of Imperial, State of California, according to Map on file in Book 13, Page 40 of Final Maps in the office of the County Recorder of Imperial County.

Together with that portion of the vacated alley adjacent to and West of said Lot 1, lying between the Westerly extension of the North and South lines of said Lot 1, pursuant to Resolution 97-39, recorded June 17, 1997, in Book 1984, Page 1247 of Official Records of Imperial County, and further defined in Resolution 02-125, recorded December 27, 2002, in Book 2168, Page 1019 of Official Records of Imperial County.

74.     The buyer of the Defendant La Brucherie Road Property was The School-Aged Gap Elimination Initiative, Inc. Aghaloo is the owner of The School-Aged Gap Elimination Initiative, Inc. Based on a title report acquired on or about April 20, 2019, The School-Aged Gap Elimination Initiative, Inc., is the current owner of the Defendant La Brucherie Road Property.

//

75.     The Defendant La Brucherie Road Property constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of a Federal health care offense, including violations of 18 U.S.C. § 1035 (False Statement Relating to Health Care Matters); § 1343 (Honest Services Wire Fraud Affecting a Health Care Benefit Program); § 1347 (Health Care Fraud); and 42 U.S.C. § 1320a-7b(b) (Health Care Fraud).

76.     By virtue of the aforementioned acts and premises alleged herein, either singly or in combination, the Defendant La Brucherie Road Property is subject to forfeiture under Title 18, United States Code, Sections 981(a)(1)(C) and 1956(c)(7)(F).

77.     The estimated value of the La Brucherie Road Property is approximately $311,000.

Defendants 1 through 3 are in the custody of the United States, having been seized pursuant to legal process prior to the commencement of this action.  The United States respectfully requests the Court authorize the United States Marshal Service to take custody and control of Defendants 1 through 3 pursuant to Rule G(3)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

WHEREFORE, pursuant to 18 U.S.C. § 985(b)(1)(A), the United States does not request authority from the Court to seize Defendants 4 through 7 ("Defendant Real Properties").

The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

a.     post notice of this Complaint on the Defendant Real Properties, and

b.     serve notice of this action on the owners of the Defendant Real Properties along with a copy of this Complaint, and

c.     record a lis pendens notice in county records of the Defendant Real Properties' status as a defendant in this in rem forfeiture action.

Title 18 U.S.C. § 985(c)(3) provides that, because the United States will post notice of this Complaint on the Defendant Real Properties, it is not necessary for the Court to issue an arrest warrant in rem, or to take any other action to establish in rem jurisdiction over the Defendant Real Properties.   Title 18 U.S.C. § 985(b)(2) clearly states that

"the filing of a lis pendens . . . for the purpose of conducting an inspection and inventory of the property shall not be considered a seizure under this subsection."

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the Defendants, and that due notice be given to all interested parties to appear and show cause why said forfeiture should not be declared.

DATED: April 25, 2019

ROBERT S. BREWER, JR.
United States Attorney

s/LEAH R. BUSSELL
LEAH R. BUSSELL
Assistant U.S. Attorney

<u>VERIFICATION</u>

I, LEAH CHAMBERS, state and declare as follows:

1.   I am a Special Agent with the Federal Bureau of Investigation, and have read reports and talked to the federal law enforcement officers involved in this investigation.

2.   I have read the foregoing Complaint For Forfeiture and know its contents.

3.   The facts set forth in the Complaint For Forfeiture are based upon my own knowledge or were facts furnished to me by official Government sources.

Based on this information, I believe the allegations in the Complaint For Forfeiture to be true.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on April 25, 2019.

LEAH CHAMBERS, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

United States of America

**(b)** County of Residence of First Listed Plaintiff

(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

AUSA Leah R. Bussell, Phone: (619) 546-6727
USAO, 880 Front Street, Room 6293, San Diego, CA 92101-8893 +

**DEFENDANTS**

$1,428,717.56 from a bank account held at Wells Fargo Bank, account number ending in 5622, et al. +

County of Residence of First Listed Defendant

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**'19CV0770 BEN LL**

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☒ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☒ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. Section 981(a)(1)(C), 984 and 1956(c)(7)(F)

Brief description of cause:
Health Care Fraud +

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY**

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
04/26/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ Leah R. Bussell

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____